Mrs. T. H. DUNCAN (C. W. Duncan, Administrator of the Estate of Mrs. T. H. Duncan, Deceased), Plaintiff-Appellee,

v.

W. Ray DUNCAN, Defendant-Appellant.

Mrs. John FAIN, Plaintiff-Appellee,

v.

W. Ray DUNCAN, Defendant-Appellant.

Nos. 17042, 17043.

United States Court of Appeals
Sixth Circuit.

May 4, 1967.

Wirt Courtney, Nashville, Tenn. (Goodpasture, Carpenter, Woods & Courtney, Nashville, Tenn., on the brief), for appellant.

Philip M. Carden, Nashville, Tenn. (Jack Norman, Seth Norman, Herbert R. Rich, Nashville, Tenn., on the brief), for appellees.

Before O'SULLIVAN, PECK, and Mc-CREE, Circuit Judges.

PECK, Circuit Judge.

These consolidated cases arose out of a single-car accident in Lawrence County, Tennessee. The plaintiffs, defendant's mother and mother-in-law, were passengers in defendant's car when it struck a bridge abutment. Personal injury actions were commenced in a Tennessee state court and were subsequently removed to the United States District Court for the Middle District of Tennessee.

The cases were tried to a jury and a verdict finding defendant not guilty of negligence was returned. Upon plaintiffs' motion, the District Court set aside the verdicts and granted a new trial. Defendant's appeal from the order granting a new trial was dismissed by this court in 1964 for want of a final judgment, and after a second trial in which the jury returned verdicts in favor of the plaintiffs, defendant again appeals.

Several points have been raised on appeal, the principal one of which relates to the granting of the new trial. Appellant contends that the district judge acted under a mistake of law, in that he considered the case as a thirteenth juror under the inapplicable Tennessee practice. Appellant further claims that the district judge exceeded, or abused, his discretion in granting the new trial to the extent that he applied an improper legal standard. In support of this contention, appellant apparently relies on statements made by the district judge when ruling on the motion for a new trial.

A brief summary of the facts as developed at the first trial would here be appropriate. Plaintiffs, both residents of Hohenwald, Tennessee, had finished a week-long visit with defendant and his

wife in Alabama, and were returning home with defendant and his wife in defendant's car when the accident in question occurred. At approximately 11:00 a. m. on April 26, 1960, and approximately 180 miles from defendant's home, the car in which the four persons were riding went out of control and skidded into a bridge abutment on the left-hand side of the road. Although the case was presented to the jury on the theory of defendant's negligence, there is no evidence explaining why the vehicle went out of control. The only eyewitnesses to the accident were the passengers in the car, and one of these passengers, Mrs. T. H. Duncan (a plaintiff) died prior to the first trial from causes unrelated to the accident.

The first witness to testify at trial was Mrs. Fain, a plaintiff, who at the time of trial was 91 years old. Mrs. Fain testified that she was sitting on the back seat of the car; that defendant was driving the automobile at the time of the accident and that in going through Lawrenceburg on the way to Hohenwald, the former town being about eight miles from the scene of the accident, it was raining some. Her version of how the accident happened was that "As we was —As Ray drove upon the bridge, why, the crash come." Again on cross-examination, the question was asked: "I believe you said—if I did not misunderstand you—when questioned by [your attorney] that the accident happened just in a flash, that the first thing you knew, it happened and hit the bridge, and that is all you know about the accident?" This witness replied, "That's all I know."

On direct examination, Mrs. Fain stated that the speed of the automobile was "maybe sixty, sixty-five, or something like that." However, this plaintiff also conceded that her husband had never owned a car, that she had never driven one, and that she had no idea how to estimate the speed of an automobile. Finally, this plaintiff admitted that she didn't remember complaining to defendant about the manner or method in which he was operating the car, and

when asked if she heard anyone else comment on that subject, she shook her head negatively.

The next witness was defendant's wife, Mrs. Lucille Duncan. Mrs. Duncan testified that defendant was driving when they started the trip, and drove from Tuscaloosa, Alabama, to Florence, Alabama; that she drove from Florence to Lawrenceburg, Tennessee; and that defendant drove from Lawrenceburg until the time of the crash. She further stated that near Lawrenceburg, she had asked defendant if he would drive because it had begun to rain, and she didn't like to drive in the rain. According to Mrs. Duncan, the extent of the rain was "just showers." When asked how the accident happened, this witness testified "Well, I remember—I think I was looking down in the car because I don't remember seeing the bridge, but I remember seeing my husband raise his foot [from the accelerator] and then the car began to slide." With respect to the speed of the car prior to the accident, Mrs. Duncan stated that "We had been driving about 60 to 65 all the way, and [defendant] hadn't slowed up very much."

On cross-examination, Lucille Duncan was asked whether she had, on the day of the accident, told one Claude Miles (the first arrival on the scene), the patrolman who responded to the scene, and the ambulance driver that she and not defendant had been driving the automobile at the time of the crash. Her respective answers were "I never told anyone I was driving the car," and twice "I never told anyone." All three of these witnesses, called on defendant's behalf, testified that Mrs. Duncan had stated that she had been driving at the time of the accident; both the ambulance driver and Miles recalled that Mrs. Duncan had stated that defendant was asleep when the car struck the abutment and both Miles and the patrolman testified that Mrs. Duncan had stated that she was driving at approximately 50 miles per hour when the crash occurred.

The patrolman further testified that the speed limit on the stretch of road near the point of the accident was 65 miles per hour; that this stretch of road was dangerous; and that there were danger signs and "Slippery When Wet" signs posted along the road, although the exact location of these signs was not established, and with respect to the last mentioned type of sign, this witness volunteered that he didn't know "whether the driver had access to see it or not."

Defendant did not take the stand and testify.

After the court's charge the jury returned with a verdict finding defendant "not guilty of negligence in the case." Plaintiffs set forth four grounds in the motion for a new trial, one of which was that the jury's verdict was clearly against the weight of the evidence.* At the conclusion of the oral argument on the motion the trial judge stated from the bench:

"But I am not too happy with the verdict in view of the evidence in the case. It impressed me during this trial that there was almost overwhelming evidence of negligence on the part of the driver. In fact, I was quite surprised when the verdict came in as it did because I thought there was evidence of negligence.

"I am dissatisfied with the verdict. I think it is against the weight of the evidence, and I set the verdict aside and order a new trial in these cases on that ground."

The order sustaining the motion followed.

■ In ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, a district judge must compare the opposing proofs and weigh the evidence (Felton v. Spiro, 78 F. 576 (6th Cir. 1897) (Taft, J.), General American Life Ins. Co. v. Central Nat'l Bank, 136 F.2d 821 (6th Cir. 1943)), and "it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence * * *." Aetna Cas. & Surety Co. v. Yeatts, 122 F.2d 350, 352 (4th Cir. 1941), cited with approval in Turner v. United States, 229 F.2d 944, 946 (6th Cir.), cert. denied, 351 U.S. 970, 76 S.Ct. 1038, 100 L.Ed. 1489 (1956). The power of the trial judge to set aside a verdict as against the weight of the evidence and grant a new trial is thus a check or limitation on the jury's power to render a final and binding verdict, to the end that a miscarriage of justice does not result. However, "[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 488 L.Ed. 520 (1944); Werthan Bag Corp. v. Agnew, 202 F.2d 119, 122 (6th Cir. 1953). Thus, while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached. In applying these two broad principles defining the permissible limits of court action in granting a new trial on the weight of the evidence, the district judge must, as is generally stated, exercise his sound judicial discretion. See Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940); Devine v. Patteson, 242 F.2d 828 (6th Cir.), cert. denied, 355 U.S. 821, 78 S.Ct. 27, 2 L.Ed.2d 36 (1957), and cases cited infra. See generally 6 Moore, Federal Practice, ¶ 59.08 [5] (2d ed. 1953).

■ Although an order granting a new trial is generally not appealable, it is clear that such orders are reviewable on appeal from the final judgment in the second trial. See North Texas Producers Association v. Metzger Dairies,

---

* The three other grounds set forth by plaintiffs in the motion for a new trial, which grounds ostensibly were not the basis of the District Court's order sustaining the motion, have here been considered and found to be lacking in merit.

Inc., 348 F.2d 189 (5th Cir. 1965), cert. denied, 382 U.S. 977, 86 S.Ct. 545, 15 L. Ed.2d 468 (1966). Indeed, the order dismissing defendant's prior premature appeal stated that "the correctness of the District Court's order would be reviewable, of course, upon an appeal from the final judgment disposing of the case," citing Ford Motor Co. v. Busam Motor Sales, Inc., 185 F.2d 531 (6th Cir. 1950).

With respect to the applicable scope of review of a District Court decision granting or denying a new trial on the basis of the weight of the evidence, it is well settled that reversal may be predicated only upon an abuse of discretion. Cutter v. Cincinnati Union Terminal, 361 F.2d 637 (6th Cir. 1966); Southern R.R. Co. v. Miller, 285 F.2d 202, 85 A.L.R.2d 842 (6th Cir. 1960); accord, Mooney v. Henderson Portion Pack Co., Inc., 339 F.2d 64 (6th Cir. 1964); Werthan Bag Corp. v. Agnew, 202 F.2d 119 (6th Cir. 1953); Spero-Nelson v. Brown, 175 F.2d 86 (6th Cir. 1949). Cf. Trice v. Commercial Union Assur. Co., 334 F.2d 673 (6th Cir. 1964), cert. denied, 380 U.S. 915, 85 S.Ct. 895, 13 L.Ed.2d 801 (1965) ("clear abuse of discretion"); Turner v. United States, 229 F.2d 944 (6th Cir. 1956); Hunt v. Standard Brands, Inc., 72 F.2d 822 (6th Cir. 1934).

There are few cases where an appellate court has reversed a decision of a district court in either granting or denying a motion for a new trial based on the ground that the verdict was against the weight of the evidence. There is not, however, a complete lack of precedent for such action.

In Berner v. British Commonwealth Pacific Airlines, Ltd., 346 F.2d 532 (2d Cir. 1965), cert. denied, 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966), following the crash of one of defendant's planes, an action was brought for the wrongful death of one of the passengers. The flight was international and thus liability, if established, was limited to $8,291.87 by the Warsaw Convention, unless the defendant was guilty of "wilful misconduct." The jury returned a verdict for defendant on all issues and the District Court granted plaintiff's motion for judgment n. o. v. as to liability, holding that the evidence established "wilful misconduct" as a matter of law. The district judge thus granted a new trial on the issue of damages, and also granted a conditional new trial on all issues should the judgment be reversed.

The court of appeals reversed the judgment in favor of plaintiff, stating:

> "We cannot even say that the pilot's or the airline's negligence was established as a matter of law, much less wilful misconduct. Once the case went to the jury, its verdict should not have been upset, if reasonable men could find in defendant's favor, as they certainly could here," Id. 346 F.2d at 538.

In reviewing and reversing the conditional grant of a new trial on all issues, based on the ground that the verdict was against the weight of the evidence, the court stated:

> "We have already held that there was sufficient evidence to go to the jury. * * * To order a new trial on the asserted ground when there was sufficient evidence to go to the jury need not be an abuse of discretion in every case, see 6 Moore, Federal Practice ¶ 59.08 [5], at 3817, 3820 (2d ed. 1953), but we find it was in this case. In light of the possible inferences as to what actually happened when the pilot began his let-down, we cannot agree that, viewed in light of the proper standard, the verdict could be called against the weight of the evidence."

The court then reinstated the original verdict in favor of defendant and set aside the judgment entered upon the second jury's determination of $924,396 damages.

In Lind v. Schenley Industries, Inc., 278 F.2d 79 (3d Cir.) (En banc), cert. denied, 364 U.S. 835, 81 S.Ct. 58, 5 L. Ed.2d 60 (1960), a case procedurally similar to *Berner*, the jury returned a

verdict in favor of plaintiff, and the district judge entered judgment n. o. v. for defendant, and conditionally granted a new trial in the event the judgment was reversed. On appeal, the court reversed the judgment and proceeded to review the order granting a new trial. The first ground specified in support of this order, that the verdict was contrary to law, had been disposed of by the ruling on the judgment; the second ground, that the verdict was the result of error in the admission of evidence, was decided in plaintiff's favor. With respect to the one remaining ground, that the verdict was contrary to the weight of the evidence, the court noted:

"New trials granted because (1) a jury verdict is against the weight of the evidence may be sharply distinguished from (2) new trials ordered for other reasons: for example, evidence improperly admitted, prejudicial statements by counsel, an improper charge to the jury or newly discovered evidence. In the first instance given it is the jury itself which fails properly to perform the functions confided to it by law. In the latter instances something occurred in the course of the trial which resulted or which may have resulted in the jury receiving a distorted, incorrect, or an incomplete view of the operative facts, or some undesirable element obtruded itself into the proceedings creating a condition whereby the giving of a just verdict was rendered difficult or impossible.

\* \* \* \* \* \*

"[W]here no undesirable or pernicious element has occurred or been introduced into the trial and the trial judge nonetheless grants a new trial on the ground that the verdict was against the weight of the evidence, the trial judge in negating the jury's verdict has, to some extent at least, substituted his judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts. It then becomes the duty of the appellate tribunal to exercise a closer degree of scrutiny and supervision than is the case where a new trial is granted because of some undesirable or pernicious influence obtruding into the trial. Such a close scrutiny is required in order to protect the litigants' right to jury trial.

"Where a trial is long and complicated and deals with a subject matter not lying within the ordinary knowledge of jurors a verdict should be scrutinized more closely by the trial judge than is necessary where the litigation deals with material which is familiar and simple, the evidence relating to ordinary commercial practices."

The court concluded that the district judge had substituted his judgment for that of the jury, thereby abusing his discretion, and the case was remanded back with instructions that the original verdict and judgment be reinstated.

The court in Fassbinder v. Pennsylvania R.R. Co., 322 F.2d 859 (3d Cir. 1963) (En banc), held that the district judge had erred in failing to give effect to the inference of negligence warranted by the doctrine of *res ipsa loquitur*, and as a consequence had usurped the function of the jury. And in Georgia-Pacific Corp. v. United States, 264 F.2d 161 (5th Cir. 1959), the court held the District Court's refusal to grant a new trial to be a clear abuse of discretion where the verdict was found to lack evidentiary support. See also Charles v. Norfolk & Western Ry. Co., 188 F.2d 691 (7th Cir.), cert. denied, 342 U.S. 831, 72 S. Ct. 55, 96 L.Ed. 628 (1951).

Appellant further contends that "in setting aside the verdict on the basis of his dissatisfaction with it, [the district judge] lapsed into the inapplicable Tennessee practice, considered himself as a thirteenth juror and [thereby] committed a palpable error. \* \* \*" Appellant seems to argue that isolated statements made by the district judge support this conclusion, but they may

not properly be so viewed. Rather, those statements may only be considered in context and after having had due regard for the entire record, including particularly the evidence adduced at the first trial. Although a determination of this contention is not essential to the conclusion herein announced, it is observed that the argument is not supported by the record.

Defendant's evaluation of the subject matter of this case as a "prime example of subject matter lying well within the comprehension of jurors" is deemed accurate. The first trial lasted less than two days, and there has been no showing that the jury considered any matter not properly before it. Moreover, plaintiffs' case of negligence against defendant could not be characterized as strong and it is clear that the credibility of plaintiffs' witnesses was in issue. In this respect it must be remembered that, as the court correctly charged the jury, the burden of proof in establishing negligence was on plaintiffs. The jury was not required to impose liability on defendant on the basis of the testimony of his wife and aged mother-in-law, and the jury's verdict in the first trial was, at the very least, a reasonable one. Therefore, on the basis of this record, it cannot be said that the District Court did not clearly abuse its discretion in granting plaintiffs a new trial on the ground that the verdict was against the weight of the evidence.

The fact that the second jury which heard the case returned a verdict in favor of plaintiffs, thus "reinforcing" the decision of the district judge that the verdict for defendant was against the weight of the evidence, is of no significance here. See Fassbinder v. Pennsylvania R.R. Co., supra. Even the most inexperienced attorney is aware of the fact that the outcome of any given case depends in large part upon the particular jury hearing it. As was stated in American Mfgrs. Mut. Ins. Co. v. Wilson-Keith & Co., 247 F.2d 249, 256 (8th Cir. 1957), there with reference to an alleged error of law, "regardless of the different results in the trials, the function of this court is to review alleged errors and if [a party litigant] had become, in due course, vested with a valid judgment, they are entitled to have the action of the trial court which divested them of it reviewed for the alleged manifest error * * *."

For the foregoing reasons, the judgment in favor of plaintiffs is vacated, the order granting plaintiffs a new trial is reversed and the case is remanded back with instructions that the verdict and judgment in defendant's favor be reinstated.