the defendants.[6]

UNITED STATES of America,
Plaintiff,

v.

Allen BARNETT, Defendant,

In re: The matter of Linda Nettles
Harris, Appellant.

Nos. 00–6788, 01–5691.

United States Court of Appeals,
Sixth Circuit.

Nov. 22, 2002.

Before SILER, COLE, and CLAY,
Circuit Judges.

## OPINION

COLE, Circuit Judge.

Linda Nettles–Harris, an Assistant United States Attorney ("AUSA") in the Western District of Tennessee, appeals the judgment of the district court to the extent it constitutes a sanction of her conduct. For the reasons discussed herein, we DISMISS the appeals for lack of jurisdiction.

## BACKGROUND

### A. Factual Background

In her capacity as AUSA, Harris served as prosecutor in a criminal case against Allen Barnett, the defendant in the underlying case. Barnett was charged with twenty-four counts of mail fraud. An insurance appraiser for Permanent General Assurance (PGA), Barnett was accused of receiving kickbacks from inflated automobile repair estimates made at co-defendant Terry Penna's Pro Body Shop in Memphis, Tennessee. As part of this fraudulent scheme, Penna and Barnett would inflate repair estimates for Penna's customers; Penna would then pocket the difference between the padded estimate and the actual repair cost and pay Barnett a portion of these proceeds. At times, Penna would pass on some of these illegal proceeds to the customers themselves. The government alleged that Barnett and Penna were collectively responsible for mailing and receiving checks containing overcharges that totaled approximately $104,175.

A trial was held before United States District Judge McCalla in the Western District of Tennessee. Penna, who had already been convicted in a separate trial, agreed to testify on behalf of the government. Harris indicated to Penna that if he provided substantial assistance to the government's case against Barnett, she would file a motion for a downward departure in his sentence pursuant to U.S.S.G. § 5K1.1. Prior to trial, Thomas Gibson, counsel for Barnett, asked Penna's attorney, Ted Jones, if he could interview Penna. Jones agreed, provided that he could be present during the interview. Jones notified Harris of the interview and provided her an audio recording of its contents.

During the interview, Penna made several remarks about the questionable credibility of three of his former employees who were also government witnesses. Upon listening to the taped interview, Harris contacted Jones via voicemail. The two disputed the precise contents of the voicemail, but in general, Harris warned Jones that she would be less willing to follow through with a § 5K1.1 motion for Penna if he continued to make disparaging remarks about government witnesses.

At trial, Penna testified upon direct examination that he and Barnett agreed to inflate repair estimates, submit the padded estimates to PGA, and pocket the difference. Penna also stated that he sometimes would arrange for insurance reimbursement payments for customers who submitted false claims for repairs. Penna testified that he did so for at least two customers, Sherita Ash and Thomas Boyd. In addition, on cross-examination, Penna denied that he ever made statements about the credibility of other government witnesses.

Ash and Boyd also testified on behalf of the government. Harris questioned both witnesses about their knowledge of Penna and Barnett's practices in regard to insurance reimbursement. Contrary to Penna's testimony, both witnesses denied ever receiving payment from Penna related to inflated estimates.

After Ash, Boyd, and Penna testified and the jury was excused, Judge McCalla questioned Harris about the conflicting testimony between Penna on the one hand and Ash and Boyd on the other:

> The Court: The second question is this: Frankly, I need to know if your position is that [Penna] is telling the truth now?
>
> Mrs. Harris: Yes, your Honor.
>
> The Court: It is your position that he's telling the truth now?
>
> Mrs. Harris: Yes.

The Court: And its [sic] your position that Ms. Ash and Mr. Boyd did not tell the truth?

Mrs. Harris: Yes.

The Court: Is that your position also?

Mrs. Harris: Yes.

The Court: Alright, let me see Mr. Laurenzi [Criminal Chief, U.S. Attorney's Office] at the side-bar with no one else.

Mrs. Harris: Well, Your Honor—

The Court: With no one else. Thank you.

During this sidebar, the district court advised Lawrence Laurenzi, Harris's co-counsel, that "Mrs. Harris apparently presented witnesses that she knew would tell a falsehood in a case in an effort to convict this man. I don't think there's any question about it." Laurenzi agreed to investigate Judge McCalla's concerns. The next day, the government filed a motion for clarification, stating that the testimony of Ash and Boyd was presented to the jury because the government was unable to resolve the conflict between the two version of events, and because the government was obligated to introduce it under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The district court revisited the issue when it considered Barnett's motion for judgment of acquittal under Fed.Crim. R. Pro. 29. At that time, the district court made clear that while it believed that Harris knowingly produced false testimony, it did not wish to address any professional misconduct emanating from her error.

The Court: And you told me on Thursday on the record that you did not believe the testimony of Boyd and you did not believe the testimony of Ash. That's correct too, isn't it?

Harris: Yes sir, it is.

The Court: And that was your true and honest opinion on Thursday?

Harris: That's correct.

The Court: It is? And you put them on anyway.

Harris: Your Honor, I believe that I was obligated to put them on pursuant to *Brady,* as I told the Court—

The Court: You're never obligated to put on perjurious testimony.

Harris: Well, Your Honor, this was not perjured testimony—first of all, I don't believe it was material as to whether or not Mr. Barnett committed the offense as to what Ms. Ash may or may not have done. I do think that it was material to the credibility—

\*    \*    \*    \*    \*    \*

Harris: May I please respond?

The Court: May I be completely clear? I do not wish to hear this, I will allow it to be determined by the appropriate entity.

Harris: I understand, Your Honor.

The Court: I do not wish to be further involved with this very unfortunate situation.

\*    \*    \*    \*    \*    \*

The Court: I'm not willing to discuss this, Mrs. Harris. You can discuss it with the appropriate individuals. The only question for me to resolve is whether or not the prosecutorial misconduct in this case requires that I grant the motion at this point in time.

\*    \*    \*    \*    \*    \*

The Court: Please, Mrs. Harris. I am not here for the purpose of taking evidence in the matter that relates to your conduct, and I don't think that you're well advised to make further statements on that point. I think it is against your interest to do that.

Harris: I understand. My statements are not clear, though, and I just want to state for the record my statements are not clear.

The Court: It was perfectly clear, and I do not—Mrs. Harris, please do not insult the Court. Your statement was perfectly clear, and I am not interested in addressing your issue. I'm only interested in dealing with this case. You want to talk about what you want did [sic] in this case, go talk to the people who will resolve that.

Harris: Very well.

The Court: Please don't insist on making a statement at this time. It is just not in your interest and I think you should not do it. Now, I think I have been as clear as I can be on this point. We will let somebody else, I don't want to have any more to do with this matter, other than to rule on the legal issue....

The district court denied Barnett's motion for judgment of acquittal. The matter was then submitted to the jury.

On January 12, 2000, the jury reached verdicts of guilty against Barnett on eleven of twenty-four counts of mail fraud. On January 20, 2000, Barnett filed a motion for new trial on the grounds that the government (1) knowingly introduced the false testimony of Ash and Boyd; (2) violated Barnett's due process rights by preventing Penna from testifying openly about the credibility of other government witnesses; and (3) improperly suggested to the jury that the burden of proof rested with Barnett. The district court, after considering the government's memorandum opposing the motion, granted Barnett a new trial on the grounds that the government knowingly introduced false testimony and interfered with Barnett's due process rights by threatening not to file a § 5K1.1 motion for Penna. Barnett has since been tried a

second time, at which Harris again served as prosecutor.

Harris now appeals the district court's Order Granting a New Trial ("Order"). She argues that the district court's findings as to her conduct constitute an appealable sanction. Harris appeals the substance of the district court's findings in imposing this "sanction."

## DISCUSSION

Article III of the United States Constitution provides that this court may only exercise jurisdiction over matters where the appellant possesses standing. To demonstrate standing, a party must satisfy three criteria. *Northeastern Fla. Contractors v. Jacksonville,* 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). First, the party must allege that she has suffered, or will imminently suffer, an injury. *Id.* Second, the party must demonstrate "a causal relationship between the injury and the challenged conduct." *Id.* Third, the party must demonstrate that a favorable federal court decision is likely to redress the injury. *Id. See also Coal Operators and Assocs., Inc. v. Babbitt,* 291 F.3d 912, 916 (6th Cir.2002) ("Hence, the irreducible minimum constitutional requirements for standing are proof of injury in fact, causation, and redressability.") (internal quotations omitted).

Harris presents a unique set of circumstances for this court's review. In particular, Harris individually appeals the Order to the extent that the district court's findings constitute a sanction on her personally. This court must thus determine whether the Order constitutes a sanction against Harris, thereby creating an injury. We conclude that it does not.

A number of courts have considered whether a district court's statements regarding counsel's performance can consti-

tute a sanction where no fine, service, or other such penalty is imposed. Those courts are in agreement that mere criticism of an attorney's conduct, without more, does not constitute a sanction and thus is not appealable. *See Weissman v. Quail Lodge, Inc.,* 179 F.3d 1194, 1199 (9th Cir.1999) ("We conclude that the district court's comments alone are not sanctions, but rather are merely its factual findings made in support of the Order. We find no basis independently to review the allegedly derogatory statements about [counsel]."); *Williams v. United States,* 156 F.3d 86, 90 (1st Cir.1998) ("Still, it is an abecedarian rule that federal appellate courts review decisions, judgments, orders, and decrees—not opinions, factual findings, reasoning, or explanations."); *Bolte v. The Home Ins. Co.,* 744 F.2d 572, 573 (7th Cir.1984) ("[w]e don't think a finding in a district judge's opinion that someone engaged in wrongful conduct is an appealable final order. If it were, a breathtaking expansion in appellate jurisdiction would be presaged ... such appeals would be particularly unmanageable because usually there would be no appellee."). These courts have found that an order constitutes an appealable sanction only where the district court makes a formal, particularized finding of misconduct that exists independent of the court's other factual and legal findings. *See United States v. Talao,* 222 F.3d 1133, 1138 (9th Cir.2000) ("A reprimand generally carries with it a degree of formality. The requisite formality in this case is apparent from the fact that the trial court found a violation of a particular ethical rule, as opposed to generally expressing its disapproval of a lawyer's behavior."); *Weissman,* 179 F.3d at 1199 ("Formal reprimand by an attorney by the district court is a possible sanction ... [w]e decline to find, however, that any time a court includes critical words about an attorney's conduct in an order, those

words constitute a formal reprimand."); *Walker v. City of Mesquite, Tex.,* 129 F.3d 831, 832 (5th Cir.1997) (finding sanction where district court found that attorney had breached his duty of candor to the court). These courts reason that a district court's reprimand for professional misconduct creates a particularized injury to counsel, whereas factual findings regarding the conduct of counsel that relate to a legal conclusion do not. *See, e.g., Talao,* 222 F.3d at 1138 ("Further, the district court's conclusion that [the AUSA] violated rule 2–100 carries consequences of a reprimand. If the court's formal finding is permitted to stand ... she might be subjected to further disciplinary action by the California Bar.").

This court has not yet addressed the extent to which a district court's written order can constitute a sanction. However, even if this court were to adopt the position that an order containing particularized findings of professional misconduct is an appealable sanction, Harris fails to demonstrate that the district court made such a finding. Rather, the record is clear that the district court intended only to address Harris's conduct in the context of its legal conclusions. The court made numerous statements to Harris indicating that it did not wish to address her professional misconduct:

> The Court: I do not wish to hear this, I will allow it to be determined by the appropriate entity.
>
> \* \* \* \* \* \*
>
> I do not wish to be further involved with this very unfortunate situation.
>
> \* \* \* \* \* \*

I'm not willing to discuss this, Mrs. Harris. You can discuss it with the appropriate individuals. The only question for me to resolve is whether or not the prosecutorial misconduct in this case re-

quires that I grant the motion at this point in time.

\* \* \* \* \* \*

I am not interested in addressing your issue. I'm only interested in dealing with this case. You want to talk about what you want did [sic] in this case, go talk to the people who will resolve that.

\* \* \* \* \* \*

Now, I think I have been as clear as I can be on this point. We will let somebody else, I don't want to have any more to do with this matter, other than to rule on the legal issue. . . .

Moreover, the record reveals that the district court referred the matter of Harris's trial conduct to a separate entity. On January 25, 2000, Judge McCalla sent a letter to the United States Department of Justice Office of Professional Responsibility, apprising that office of the "likelihood of unprofessional conduct" by Harris. After conducting an investigation into the matter, the Office of Professional Responsibility notified Veronica Coleman, at the time the United States Attorney for the Western District of Tennessee, that it found no wrongdoing on the part of Harris, and that the matter was considered closed. It is thus clear that the district court explicitly deferred the matter of Harris's conduct to another entity rather than address it at trial. Furthermore, that the Office of Professional Responsibility absolved Harris of any wrongdoing further demonstrates that she is unable to demonstrate an injury as result of the district court's actions.

We note that the concerns of the district court in this matter were likely without support in the law. However, because the record overwhelmingly suggests that the district court's assessment of Harris's conduct in the context of its Order Granting a New Trial does not constitute an appeal-

able sanction, Harris has failed to demonstrate an injury for the purposes of standing. We thus must dismiss for lack of jurisdiction.

## CONCLUSION

For the aforementioned reasons, we **DISMISS** the appeals for lack of jurisdiction.