*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0160p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

No. 09-5511
In re: THE METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY,
TENNESSEE,

                              *Petitioner.*

_____

No. 09-5515
CLAUDE GRANT, ORALENE DAY, PRINCESS
MARTINDALE, FALETHA B. REID, DARRYL
MCKIBBENS, DARREL GANT, ANTONIO
MCKISSACK, PAMELA TUCKER, SANDRA
DERRICK, individually and on behalf of all
others similarly situated,

                    *Plaintiffs-Appellees,*

        *v.*

THE METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY,
TENNESSEE,

                    *Defendant-Appellant.*

Nos. 09-5511/5515

On Petition for Writ of Mandamus and
On Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 04-00630—William J. Haynes, Jr., District Judge.

Argued: April 30, 2010

Decided and Filed: June 4, 2010

Before: MOORE and GILMAN, Circuit Judges; RUSSELL, Chief District Judge.[*]

_____

[*] The Honorable Thomas B. Russell, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** Kevin C. Klein, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, for Appellant.  Martin D. Holmes, DICKINSON WRIGHT PLLC, Nashville, Tennessee, for Appellees.  **ON BRIEF:**  Kevin C. Klein, James W.J. Farrar, Allison L. Bussell, METROPOLITAN DEPARTMENT OF LAW, Nashville, Tennessee, for Appellant.  Martin D. Holmes, Colleen M. Sweeney, DICKINSON WRIGHT PLLC, Nashville, Tennessee, for Appellees.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  Claude Grant, Oralene Day, Princess Martindale, Faletha Reid, Darryl McKibbens, Darrel Gant, Antonio McKissack, Pamela Tucker, and Sandra Derrick (the Plaintiffs) brought suit against their employer, the Metropolitan Government of Nashville and Davidson County (Metro), on their own behalf and on behalf of a class of all similarly situated employees, alleging that they were discriminated against on account of their race.  After a nine-day trial on most of the issues, the jury found in favor of Metro.  The Plaintiffs then moved for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, arguing that the verdicts were against the clear weight of the evidence and that the proceedings were prejudiced by the conduct of Metro's counsel.  Relying on these grounds, the district court granted the Plaintiffs' motion.

Metro has appealed the grant of the Rule 59 motion and has filed a petition for a writ of mandamus that requests us to reinstate the jury verdicts and order the district court to rule on the disparate-impact claims that were reserved for the court to decide. For the reasons set forth below, we **DISMISS** Metro's appeal as premature, **GRANT** the petition for a writ of mandamus to the extent of directing the district court to rule on the outstanding disparate-impact claims within 90 days from the filing of this opinion and prior to any retrial, **DENY** the remainder of the petition, and **REMAND** the case for further proceedings consistent with this opinion.

# I. BACKGROUND

The Plaintiffs contend that Metro discriminates against its African-American employees in how it allocates job assignments, promotions, salaries, accommodations, discipline, and other aspects of employment. All but one of the named plaintiffs are current employees in Metro's Water Services Division, and all raised claims of disparate treatment, disparate impact, and exposure to a hostile work environment. In addition, the Plaintiffs moved for and were granted class certification by the district court. They subsequently raised class claims on behalf of "past, present, and future [African-American] employees of [Metro's Water Department] from January 1, 2000 to present."

The case went to trial in April 2008 and lasted nine days, with the Plaintiffs raising more than 50 separate claims for relief. Evidence at the trial consisted of testimony from the individual plaintiffs, competing expert witnesses who presented statistical analyses of Metro's personnel decisions, and current Metro employees who were involved in employment decisions. In addition, numerous internal documents were admitted as exhibits.

Toward the end of the trial, the district court granted Metro's motion that requested the court, rather than the jury, to decide the Plaintiffs' disparate-impact claims. The remaining 46 claims were submitted to the jury, which returned verdicts for Metro on all of them. Presumably because the Plaintiffs' disparate-impact claims have yet to be resolved, the district court never entered a final judgment in the case, although the court did enter a one-paragraph order dismissing with prejudice the jury-tried claims and reserving decision on the disparate-impact claims.

Roughly two weeks after the jury returned its verdicts, the Plaintiffs moved for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, specifically requesting relief "on the class claims for intentional discrimination and each of the eight (8) individual claims for intentional discrimination." The motion alleged that the jury's verdicts were against the clear weight of the evidence and that Metro's counsel had unfairly prejudiced the proceedings. Ten months later, the district court granted the motion for a new trial. The court relied on the same two grounds that the Plaintiffs had

raised in their motion, although the court's order discussed evidence and incidents of alleged prejudicial behavior by Metro's counsel that the Plaintiffs had not mentioned. On the other hand, the court did not specify the claims to which the order applied, stating only "that Plaintiffs' motion for a new trial on their individual and class claims should be granted."

Metro filed a notice of appeal with the district court and, contemporaneously, a petition for a writ of mandamus with this court. We subsequently consolidated the mandamus petition with Metro's direct appeal, ordered the Plaintiffs to file a response to the petition, and invited the district court judge to respond if he wished to do so. The district court declined to respond to the petition.

On appeal, Metro argues that the district court exceeded its jurisdiction in granting a new trial, and that its order constitutes an erroneous and appealable sanction of Metro's trial counsel. In addition, Metro asserts that the district court erred so seriously in granting a new trial that we should grant mandamus and reinstate the jury verdicts, as well as direct the district court to rule on the outstanding disparate-impact claims. The Plaintiffs respond by arguing that we lack jurisdiction to consider a direct appeal from the grant of a Rule 59 motion, and that mandamus is inappropriate because the district court's decision to grant a new trial was sound.

## II. ANALYSIS

### A.     Appeal from the grant of a Rule 59 motion for a new trial

Although Metro seeks to directly appeal the district court's order granting a new trial, such an order is generally not appealable. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) ("An order granting a new trial is interlocutory in nature and therefore not immediately appealable."); *Pellarino v. Ford Motor Co.*, 424 F.2d 241, 242 (6th Cir. 1970) ("It is settled that an appeal will not lie from an order granting a new trial."). This is because such an order does not qualify as a "final decision[]" under 28 U.S.C. § 1291 and thus is not reviewable until a final judgment has been entered by the district court. *See Pellarino*, 424 F.2d at 242. Accordingly, a party who wins at trial but

whose opponent is granted a new trial is generally prohibited from defending the initial verdict on appeal until *after* a subsequent retrial.  11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2818 (2d ed. 2010).

We do have jurisdiction to hear a direct appeal from the grant of a new trial, however, where the district court exceeded *its own* jurisdiction in so doing.  *See Fuller v. Quire*, 916 F.2d 358, 360 (6th Cir. 1990) (holding that the district court did not exceed its jurisdiction, and thus rejecting the defendant's attempt to appeal a nonfinal order granting a motion for relief from judgment).  Metro argues that the district court below exceeded its jurisdiction by disregarding Rule 59 and thus acted without authority.  The applicable portions of Rule 59 read as follows:

**(a)**    **In General.**

    **(1)**    **Grounds for New Trial.** The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:

        **(A)**    after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

        **(B)**    after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

    . . . .

**(b)**    **Time to File a Motion for a New Trial.**  A motion for a new trial must be filed no later than 10 days after the entry of judgment.

. . . .

**(d)**    **New Trial on the Court's Initiative or for Reasons Not in the Motion.**  No later than 10 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

> **(e)**     **Motion to Alter or Amend a Judgment.**  A motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment.

Fed. R. Civ. P. 59 (2008) (amended 2009).

Metro's specific argument is that the district court exceeded its own jurisdiction by granting the Plaintiffs a new trial for "a reason not stated in the[ir] motion."  *See id.* at 59(d).  The court did not order a new trial until more than 10 months after the initial trial, and Metro contends that the order was therefore entered far later than 10 days after the entry of judgment. *See id.*  Thus, according to Metro, if the district court had wished to grant a new trial for "a reason not stated" in the Plaintiffs' motion, it would have needed to give Metro and the Plaintiffs notice and an opportunity to be heard. *See id.*  The district court did not do so.  Metro therefore contends that the district court exceeded its own jurisdiction.

### 1.     *Entry of judgment*

The argument that we have jurisdiction hinges on Metro's contention that the district court issued an "entry of judgment" regarding the claims that were presented to the jury. *See id.*  A review of the district court's docket, however, reveals no entry of judgment on these claims.  In its petition for a writ of mandamus, Metro argues that the district court's post-trial order dismissing with prejudice the claims addressed by the jury serves as an entry of judgment.  But that document is not titled as an entry of judgment, does not use the term "judgment" at all, and, because it specifically reserves the disparate-impact claims for the judge to decide, is not a final, appealable order. *See Levy v. Yenkin-Majestic Paint Corp.*, No. 89-2349, 1990 WL 2777, at *1 (6th Cir. Jan. 18, 1990) ("In the absence of certification as a final judgment under Fed. R. Civ. P. 54(b), an order disposing of fewer than all parties or claims in an action is not a final, appealable order.").  As a result, the post-trial order referenced by Metro does not meet the definition of the term "judgment." *See* Fed. R. Civ. P. 54(a) (defining a "judgment" as "a decree and any order from which an appeal lies").

Metro alternatively argues that even if the district court's order adopting the jury verdicts and formally dismissing the majority of the Plaintiffs' claims is not an entry of judgment, it nevertheless eventually qualified as an entry of judgment under Rule 58(c)(2)(B) of the Federal Rules of Civil Procedure. Rule 58(c)(2)(B) provides that "judgment is entered" automatically when 150 days have run after a judgment appears on a district court's docket. This argument, however, ignores the unique rules that apply in cases where a court order disposes of fewer than all of the claims pending in a case.

Specifically, Rule 54(b) of the Federal Rules of Civil Procedure provides that "[w]hen an action presents more than one claim for relief," as in the present case, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." Here, the jury trial did not resolve all of the claims, and thus the court would have had to make an express determination that there was no just reason for delaying the entry of final judgment on the jury-tried claims for the same to become appealable. *See Bonner v. Perry*, 564 F.3d 424, 427 (6th Cir. 2009) ("A grant of partial summary judgment that does not dispose of all parties and all claims is generally not immediately appealable unless the district court issues a Fed. R. Civ. P. 54(b) certificate."); *Daleure v. Kentucky*, 269 F.3d 540, 543 (6th Cir. 2001) (explaining that a "district court certifying an order under Rule 54(b) must *clearly explain* why it has concluded that immediate review of the challenged ruling is desirable" (citation and internal quotation marks omitted) (emphasis in original)); *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994) (explaining that, in order to enter judgment on some but not all of the claims in a case, the district court "must expressly direct" that judgment as to certain claims is final and expressly determine that there is no just reason to delay review (internal quotation marks omitted)).

The district court did not make such a determination in the present case. There is nothing in its one-paragraph order indicating that the court was directing an entry of judgment on the jury-tried claims. *Cf. Kelly v. Lee's Old Fashioned Hamburgers,*

*Inc.*, 908 F.2d 1218, 1220 (5th Cir. 1990) (en banc) (holding that the requirement in Rule 54(b) that the district court make "an express determination that there is no just reason for delay and . . . an express direction for the entry of judgment" is met where the record "reflects the district court's *unmistakable intent* to enter a partial final judgment" (emphasis added)).

Where a court fails to enter such a judgment, "any order or other decision, however designated, that adjudicates fewer than all of the claims . . . does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b). Accordingly, because the jury's verdicts dealt with fewer than all of the Plaintiffs' claims and because the district court never expressly entered a partial final judgment on the claims resolved by the jury, there was never a Rule 54(b) entry of judgment in this case. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 945-46 (6th Cir. 2004) (holding that the court's partial grant of summary judgment was not an entry of judgment under Rule 54(b) and thus did not trigger Rule 59(e)'s timing provision). There being no entry of judgment in the present case as required to trigger Rule 59(d)'s timing provisions, Metro's argument that the district court exceeded its jurisdiction under Rule 59(d) is without merit.

### 2.    *Attorney sanctions as a basis to appeal*

Metro's alternative contention is that we have jurisdiction over this case because the district court's order amounts to a finding that Metro's counsel committed sanctionable misconduct. In some circuits, a "particularized finding of misconduct" by a district court constitutes enough of an injury to make that finding appealable. *See United States v. Barnett (In re Harris)*, 51 F. App'x 952, 956 (6th Cir. 2002) (citing cases). This circuit, however, has never reached such a conclusion. *See id.* at 956-57 (explaining that "[t]his court has not yet addressed the extent to which a district court's written order can constitute a sanction" that would create an injury sufficient to provide standing to appeal).

Moreover, the circuits vary in how they apply this rule. *See, e.g., Bowers v. NCAA*, 475 F.3d 524, 542-44 (3d Cir. 2007) (holding that attorneys whose behavior was declared sanctionable could appeal despite not receiving "any additional monetary or disciplinary sanctions . . . beyond factual findings and language in the actual order that the conduct of those attorneys merited sanctions"); *Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163, 1166, 1168-69 (10th Cir. 2003) (allowing attorneys to appeal orders that "directly aggrieve them"); *Williams v. United States (In re Williams)*, 156 F.3d 86, 90-93 (1st Cir. 1998) (allowing attorneys to appeal orders criticizing their conduct only where the district court identified the criticism as a reprimand or a sanction); *Walker v. City of Mesquite*, 129 F.3d 831, 832-33 (5th Cir. 1997) (allowing an appeal from a district court's order reprimanding an attorney for misconduct despite the lack of a fine or other punishment); *Clark Equip. Co. v. Lift Parts Mfg. Co.*, 972 F.2d 817, 820 (7th Cir. 1992) (rejecting an attorney's attempt to appeal a district court order that was critical of his conduct where he could not show that he suffered any monetary harm from the criticism).

Metro offers no argument for *why* we should set a new precedent by declaring that an attorney who is sanctioned or, as in this case, who is found to have prejudiced a trial based on improper conduct, suffers an appealable injury. It also fails to make any argument about why, if we do establish such a precedent, we should adopt the most lenient standard available.

Moreover, we find the reasoning in our unpublished decision in *Barnett*, which dealt with very similar circumstances, to be persuasive. The district court in that case accused the federal prosecutor of knowingly presenting perjured testimony after several government witnesses testified inconsistently about their level of illegal activity. *Barnett*, 51 F. App'x at 953-55. When the jury returned a verdict convicting Barnett, the district court granted a motion for a new trial, partially on the ground that the prosecutor knowingly introduced false testimony. *Id.* at 955. The case was retried and Barnett was convicted once again. After the retrial, the prosecutor filed an appeal

challenging the order granting a new trial, arguing "that the district court's findings as to her conduct constitute an appealable sanction." *Id.*

The opinion in *Barnett* explained that "even if this court were to adopt the position that an order containing particularlized findings of professional misconduct is an appealable sanction, [the prosecutor] fails to demonstrate that the district court made such a finding." *Id.* at 956. In that case, the district court repeatedly stated that it was not finding the prosecutor guilty of misconduct, and instead simply addressed her conduct "in the context of its legal conclusions." *Id.*

This treatment of alleged misconduct in *Barnett* parallels how the district court in the present case dealt with Metro's counsel. The court here never specifically sanctioned or formally charged Metro's counsel with misconduct. Instead, the court simply relied on its conclusion that Metro's counsel had prejudiced the jury as part of its rationale for granting a new trial.

Indeed, the prosecutor in *Barnett* may have had an even a stronger argument that she suffered an appealable injury because the district court in that case sent a letter to the Department of Justice suggesting an investigation into her possible misconduct (although the sending of such a letter is, in itself, plainly not appealable). *See id.* at 957. Nothing similar was done by the district court in the present case. Also noteworthy is the fact that, in *Barnett*, the prosecutor herself attempted to appeal the district court's ruling. Here, Metro, not Metro's trial counsel, is attempting to appeal, which provides an even less compelling reason to take up the issue of attorney sanctions on an interlocutory basis.

Furthermore, unlike *Barnett* where the case was retried before the prosecutor brought an appeal challenging the district court's order criticizing her conduct, Metro in the present case seeks to appeal the district court's ruling without waiting for a retrial. If we were to find standing to appeal in a case like this, parties would be able to file interlocutory appeals in cases where an attorney's allegedly prejudicial conduct was used as a basis to grant a new trial, effectively opening a "back door" method of appealing such orders. We would thus be creating a hybrid system for the review of

orders granting new trials, where those that relied on alleged attorney misconduct would be immediately appealable but those that relied on other grounds would not. Creating this disparity is unwarranted, especially because Metro—should it lose a second trial—will eventually be able to attack the district court's decision on appeal. *See Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967) ("Although an order granting a new trial is generally not appealable, it is clear that such orders are reviewable on appeal from the final judgment in the second trial."). We thus reject Metro's contention that we have jurisdiction to consider Metro's appeal by means of reviewing the district court's purported finding of alleged attorney misconduct.

**B.     Petition for a writ of mandamus**

Metro has also sought review of the district court's decision by filing a petition for a writ of mandamus. The petition asks us to invalidate the district court's order granting a new trial, reinstate the jury verdicts, and order the district court to rule on the disparate-impact claims.

### *1.     Standard of review*

"Mandamus relief is an extraordinary remedy, only infrequently utilized by this court." *In re Perrigo Co.*, 128 F.3d 430, 435 (6th Cir. 1997). The remedy is "generally reserved for questions of unusual importance necessary to the economical and efficient administration of justice or important issues of first impression." *John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008) (citation and internal quotation marks omitted). Petitioners must demonstrate a "clear abuse of discretion" by the district court in order to merit mandamus. *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 309 (1989) (citation and internal quotation marks omitted).

This court has established a five-factor test to determine whether the granting of a writ of mandamus is appropriate:

> In an effort to distinguish between "errors that are merely reversible and not subject to mandamus, and those errors that are of such gravity that mandamus is proper," *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 303 n.5 (6th Cir. 1984) (citation omitted), this court balances five

factors. We examine whether: (1) the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems, or issues of law of first impression. *In re Perrigo Co.*, 128 F.3d at 435 (citing *In re Chimenti*, 79 F.3d 534, 540 (6th Cir. 1996)). These factors need not all be met, and some factors will often be balanced in opposition to each other. *Id.*

*John B.*, 531 F.3d at 457. Each of the *John B.* factors is discussed below in the order raised by Metro in its mandamus petition.

### 2.    *Clearly erroneous as a matter of law*

Metro's primary argument is that the district court's decision was substantively wrong—that the court incorrectly viewed the evidence as favoring the Plaintiffs and unjustly cited Metro's counsel for engaging in misconduct that prejudiced the trial.

### a.    *Weight of the evidence*

The district court indeed held that the weight of the evidence supported the Plaintiffs, despite the jury finding in favor of Metro on all 46 claims that were presented to it. But Metro's contention that the court erred in so holding does not aid its case for mandamus. This is because the district court's decision on the weight of the evidence is inherently factual, not legal. *See, e.g., Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) ("Because determining 'the clear weight of the evidence' is a fact-specific endeavor, appeals courts are reluctant to second-guess district courts' conclusions."); *Murphy Oil USA, Inc. v. Wood*, 438 F.3d 1008, 1020 (10th Cir. 2006) ("A motion for a new trial on the ground that the verdict is against the weight of the evidence presents a question of fact, not of law."); *Ceraso v. Motiva Enterprises, LLC,* 326 F.3d 303, 316 (2d Cir. 2003) ("The weight of the evidence is not a ground for reversal on appeal.").

This is not to say that all weight-of-the-evidence challenges are factual. Had the court applied an erroneous legal standard in weighing the evidence, for example, this would be a legal error that would aid Metro's argument for mandamus. And weight-of-the-evidence arguments can of course be raised in a typical appeal from a trial verdict. *See, e.g.*, *Rush v. Ill. Cent. R. Co.*, 399 F.3d 705, 727 (6th Cir. 2005) (reviewing an appellant's argument that the verdict was against the weight of the evidence). But Metro makes no suggestion that the district court applied the wrong legal standard in weighing the evidence. It simply disagrees with the district court's evaluation. As a result, Metro's weight-of-the-evidence argument raises a purely factual issue.

Moreover, the district court's decision depended on how it understood the evidence, what weight it gave to various pieces of evidence, and how it judged the credibility of various witnesses. *See, e.g.*, *Verrett v. Chrysler Corp.*, No. 98-1916, 1999 WL 801567, at *3 (6th Cir. Oct. 1, 1999) (noting that how a piece of evidence impacts the credibility of witnesses "is a factual issue"). We have no reason to doubt that the court carefully observed and considered all the evidence, not the least because it was acting as the finder of fact with regard to the disparate-impact claims. In any event, the court's conclusion on this issue appears to be derived from its factual interpretations of the evidence and thus in our judgment is not "clearly erroneous *as a matter of law*." *See John B.*, 531 F.3d at 457 (emphasis added).

### b.      *Attorney misconduct*

The allegedly prejudicial behavior of Metro's counsel, on the other hand, is a different matter, because whether an attorney's conduct prejudices a proceeding is not a purely factual issue. *Cf. Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008) (noting that an ineffective-assistance-of-counsel claim presents a mixed question of fact and law). Metro complains that the district court repeatedly accused its counsel of engaging in specific prejudicial acts that he simply did not do, wrongly characterized Metro's routine objections as efforts to confuse the jury, declared Metro's attempts to

introduce relevant evidence to be misconduct, and erroneously criticized its counsel for mistating the law.

Our careful review of the record leaves us in considerable doubt as to the appropriateness of the district court's determination that Metro's counsel committed misconduct and prejudiced the proceedings. Given that a "party seeking a new trial [based on attorney misconduct] must make a concrete showing that the misconduct of counsel consistently permeated the entire trial from beginning to end," *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997), the lack of such a "concrete showing" here indicates that the district court may have erred in relying on the allegedly prejudicial conduct of Metro's counsel as a basis to grant a new trial. But even if we were to so conclude, the issuance of a writ of mandamus on that basis would be inappropriate in light of the remaining *John B.* factors discussed below.

### 3.        *Other adequate means of relief and uncorrectable damage*

Metro lumps the next two mandamus factors together, asserting that it has no other adequate means of relief beyond seeking mandamus and that it will be subjected to uncorrectable damage if we fail to grant mandamus. Specifically, Metro contends that a second trial will sap its resources and that it would not be able to appeal the grant of a new trial once a second trial has been concluded.

With regard to its "resources" argument, Metro explains that eight of the named plaintiffs continue to work for it, and that "[e]very fact witness was an employee" of Metro. It thus faces the loss of hundreds of work hours should the case be retried. In addition, Metro notes that it has incurred substantial expert witness fees and would "anticipate to incur significantly more expert fees" should a retrial occur. But the bulk of those fees were incurred as a result of its expert witness preparing a statistical analysis of the demographics and promotions within Metro's Water Department, and a retrial would simply require the expert to testify, once again, about the results of his analysis. The expert witness fees that Metro would incur upon a retrial should therefore be far smaller than those it has already incurred.

As to the length and expense of a new trial, this court has recognized that mandamus relief could be appropriate where a lengthy trial is contemplated and numerous witnesses have to be subpoenaed from distant parts of the country. *See Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1964) (granting a petition for mandamus where the district court refused to grant a plaintiff's motion to dismiss his own case with prejudice, and noting the costs of the unnecessary trial that would otherwise ensue). But here the Plaintiffs have requested a retrial on fewer than all of the claims raised at the original trial, which should lead to a shorter proceeding. And there has been no suggestion that either the Plaintiffs' or Metro's witnesses have to travel long distances to be present at the retrial. Indeed, most of them appear to be municipal employees who live nearby. Finally, Metro may be able to recoup at least some of its expenses should it prevail on retrial via a bill of costs. *See* 28 U.S.C. §§ 1920, 1921. The uncorrectable-damages factor therefore does not weigh heavily in support of Metro's mandamus claim.

Metro also expresses concern that if the case is retried and it loses, it will be unable to contest the order granting the motion for a new trial. But this concern is unwarranted. The Supreme Court has held that a litigant who wins at trial but is subject to an order granting a new trial "is free to seek review of the propriety of such an order on direct appeal after a final judgment has been entered. Consequently, it cannot be said that the litigant 'has no other adequate means to seek the relief he desires.'" *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (summarily reversing a court of appeals' decision to grant mandamus to a party contesting the grant of a new trial); *see also Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967) ("Although an order granting a new trial is generally not appealable, it is clear that such orders are reviewable on appeal from the final judgment in the second trial."); 25 Federal Procedure, Lawyers Edition § 58:44 ("Although the order granting a new trial is not appealable, it is reviewable and may be assigned as error on appeal from a final judgment entered in the new trial, and the appellate court may reinstate the judgment reached at the earlier trial."). Because Metro's concerns about its inability to obtain

appellate review of the granting of a new trial are without foundation, the no-other-adequate-means-of-relief factor does not favor mandamus.

### 4.        *Persistent disregard of the federal rules*

Metro also contends that mandamus relief is appropriate because the district court's decision disregards the requirements of Rule 59. This argument is the same as that raised in Metro's direct appeal and is based on Metro's claim that the court exceeded its jurisdiction in granting a new trial. But as discussed above, the district court did not disregard Rule 59, and its ruling therefore does not evince a persistent disregard of the federal rules.

### 5.        *New and important problems or new issues of law*

The final *John B.* factor to consider is whether the district court's order raises new and important problems or legal issues of first impression. Metro claims that the court's alleged disregard of Rule 59 constitutes a new problem. But for the reasons explained above, the district court did not disregard Rule 59. Instead, this case presents a relatively common situation—a party wins at trial, but sees its victory reversed by the grant of a new trial for reasons the party believes to be erroneous. This factor does not support the granting of mandamus.

### 6.        *Review of mandamus factors*

In sum, the relevant factors weigh against the grant of mandamus relief. *See John B.*, 531 F.3d at 457. Metro's strongest argument is that the district court's finding that Metro's counsel prejudiced the proceedings is clearly erroneous as a matter of law. But the district court provided an alternative ground for granting a new trial by holding that the weight of the evidence favored the Plaintiffs. And, as discussed above, this ground raises a factual issue that involves evaluating the strength and persuasiveness of all the evidence in the case, not a legal issue that might support mandamus. *See id.* (noting that a consideration for granting mandamus is whether the district court's order "is clearly erroneous *as a matter of law*" (emphasis added)). The strength of the clearly-erroneous-as-a-matter-of-law factor is thus obviated by this alternative ground.

Metro will obviously incur additional costs associated with a second trial. But those costs are not likely to be anywhere near those that it has already incurred to this point. Furthermore, additional costs are a common consequence in every case ordered to be reheard. Costs alone will not justify mandamus. *In re Mechem*, 880 F.2d 872, 874 (6th Cir. 1989) ("That an erroneous ruling may impose additional cost does not, however, satisfy the high standard required for mandamus."). And Metro does have other adequate means to obtain the primary relief it desires. After a retrial, should it lose, Metro will be able to argue that a new trial never should have been granted, and it can seek reinstatement of the initial verdict. *See Allied Chem.*, 449 U.S. at 36.

Metro is also unable to show that the district court's decision manifests a persistent disregard of the federal rules. *See John B.*, 531 F.3d at 457. Although Metro claims that the court disregarded Rule 59, a final judgment was never entered in this case, and thus the court's grant of a new trial was allowable. Nor does this case present new and important issues of law.

Accordingly, except with regard to one issue, we deny Metro's petition for a writ of mandamus. *See Allied Chem.*, 449 U.S. at 36 ("A trial court's ordering of a new trial rarely, if ever, will justify the issuance of a writ of mandamus."). This one issue concerns Metro's request that the district court be ordered to rule on the disparate-impact claims that the court has had under advisement since the conclusion of the trial. Because both parties desire a prompt ruling on the disparate-impact claims, and because more than two years have passed since the conclusion of the initial trial in this case, we will grant Metro's request. We therefore direct the district court to rule on the Plaintiffs' disparate-impact claims within 90 days from the filing of this opinion, and to do so prior to any retrial.

### III. CONCLUSION

For all of the reasons set forth above, we **DISMISS** Metro's appeal as premature, **GRANT** the petition for a writ of mandamus to the extent of directing the district court to rule on the outstanding disparate-impact claims within 90 days from

the filing of this opinion and prior to any retrial, **DENY** the remainder of the petition, and **REMAND** the case for further proceedings consistent with this opinion.