ALICE M. BATCHELDER, Chief Judge.
In this class action lawsuit alleging racial discrimination, the district court entered judgment for Plaintiffs after a bench trial on their disparate impact claims. Because we find that Plaintiffs failed to establish a prima facie case of disparate impact liability, we reverse.
I.
Nine named plaintiffs filed this class action under Title VII of the Civil Rights Act of 1964 (“Title VII”) against Defendant>-Appellant Metropolitan Government of Nashville and Davidson County, Tennessee (“Metro”). The named plaintiffs are current and former employees of Metro Water Services (“MWS”), a subdivision of Metro. They alleged various violations of Title VII on behalf of themselves and all others similarly situated.[1] Specifically, Plaintiffs claimed that MWS engages in systemic practices of discrimination against black employees in post-hiring opportunities, including disparate job assignments, promotions, pay, accommodations, discipline, and other terms and conditions of their employment. Plaintiffs presented disparate treatment and disparate impact theories of liability.[2]
During the bench trial, Plaintiffs sought to establish them case through anecdotal evidence and expert testimony. Plaintiffs’ expert, Dr. Moomaw, examined the proportion of black employees across numerous categories of MWS’s workforce, including FLSA exempt status, salary type, and pay grade. He found that black employees at MWS were disproportionately represented in lower-paying positions which had fewer supervisory responsibilities and fewer opportunities for advancement. Dr. Moomaw concluded that black employees’ placement into those jobs limited their opportunities for promotions and higher earnings.
Based on Plaintiffs’ evidence, the district court held that they had presented a prima facie case of disparate impact discrimination.[3] Upon determining that Plaintiffs *739 were entitled to judgment on their disparate impact claims,[4] the district court awarded them back pay, the amount of which would be determined by a Special Master appointed by the court. The court further awarded immediate injunctive relief by prohibiting MWS from conducting oral interviews for MWS promotions, imposing an interview requirement for MWS lateral transfers, and ordering a Special Master to conduct oral interviews and validate all MWS job requirements. Metro filed a timely notice of appeal.
In the meantime, the district court appointed Dr. Kathleen Lundquist as Special Master in the case to conduct oral interviews and oversee the promotions process. Alleging that Dr. Lundquist had a conflict of interest that precluded her from serving as Special Master and that the district court failed to follow Rule 53’s procedures, Metro moved the district court to revise its appointment. Although the motion was unopposed, the district court denied Metro’s motion. Metro filed a timely supplemental appeal. This Court consolidated the two appeals.
II.
As an initial matter, we must address Plaintiffs’ motion to dismiss this appeal for lack of jurisdiction. Plaintiffs argue that we lack jurisdiction to review the merits of the district court’s opinion and that we may only consider the question of whether the district court abused its discretion by granting injunctive relief.
It is well-established that we have jurisdiction over appeals from interlocutory orders that grant or deny injunctive relief. See 28 U.S.C. § 1292(a)(1). There is no dispute that some aspects of the district court’s order awarded injunctive relief, namely the component which orders Metro Civil Services Commission (“MCSC”) to conduct oral interviews and bars MWS from participation.[5] This aspect of the district court’s order is directed to Metro and MWS, enforceable by contempt, and designed to provide the relief sought by Plaintiffs in their complaint. Accordingly, this Court has jurisdiction to review the district court’s order. See 28 U.S.C. § 1292(a)(1); Abercrombie & Fitch Co. v. Fed. Ins. Co., 370 Fed.Appx. 563, 568 (6th Cir.2010).
As a general matter, we limit our review under § 1292(a)(1) to decide “only whether the district court abused its discretion in ruling on the request for relief.” Jones v. Caruso, 569 F.3d 258, 269 (6th Cir.2009) (quotation marks omitted). But in making that determination, we also have “jurisdiction to reach the merits, at least where there are no relevant factual disputes and the matters to be decided are closely related to the interlocutory order being appealed.” Id.; see also Doe v. Sundquist, 106 F.3d 702, 707 (6th Cir.1997).
In order to review the district court’s decision to grant injunctive relief in this case, we must look at the district court’s disparate impact determination — the basis for that injunctive relief. We cannot determine whether the district court abused its discretion in awarding injunctive relief unless we first determine whether the district court’s finding of liability was correct. Accordingly, we will exercise our jurisdiction to review the merits of the district court’s legal determination. Plaintiffs’ motion to dismiss is DENIED.
III.
“This Court’s standard of review in a Title VII discrimination case is narrow.” *740 Dunlap v. Tenn. Valley Auth., 519 F.3d 626, 629 (6th Cir.2008) (quotation marks omitted). While we review legal conclusions de novo, Bailey v. USF Holland, Inc., 526 F.3d 880, 885 (6th Cir.2008), we review the district court’s findings of fact for clear error, Dunlap, 519 F.3d at 629. In reviewing the court’s factual findings, “[t]he issue is not whether the district court reached the best conclusion, but whether the evidence before the court supported the district court’s findings.” Id. (citation omitted).
On appeal, Metro argues that Plaintiffs failed to establish their prima facie case of disparate impact discrimination, so we limit our discussion accordingly.[6] A prima facie case of disparate impact discrimination under Title VII requires a plaintiff to (1) identify a specific employment practice and (2) present relevant statistical data that the challenged practice has an adverse impact on a protected group. Id.
A.
Regarding the first prong of the prima facie case, the Supreme Court has explained that a plaintiff is “responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.” Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, 994, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); see also Wal-Mart Stores, Inc. v. Dukes, — U.S.-, 131 S.Ct. 2541, 2555-56, 180 L.Ed.2d 374 (2011). However, if a plaintiff demonstrates that “the elements of [an employer’s] decisionmaking process are not capable of separation or analysis, [then] the decisionmaking process may be analyzed as one employment practice.” 42 U.S.C. § 2000e-2(k)(l)(B)(i); see also Phillips v. Cohen, 400 F.3d 388, 398 (6th Cir.2005). Metro claims that Plaintiffs never isolated and identified specific employment practices, and that they failed to demonstrate that the practices are incapable of separation.
Plaintiffs’ general claim is that MWS has engaged in “preselection” which caused an adverse, disparate impact on black employees. They allege that this preselection has taken many forms, including tailored job qualifications, selective interviewing, and subjective decisionmaking. The problem, however, is that Plaintiffs make no effort to isolate any of these practices or to examine their individual effects on the promotions process. See Watson, 487 U.S. at 994, 108 S.Ct. 2777; see also 42 U.S.C. § 2000e-2(k)(1)(B)(i).
Plaintiffs’ failure to identify and isolate the effects of each specific employment practice could have been forgiven if they had “demonstrate[d] to the court that the elements of [Metro’s] decisionmaking process are not capable of separation for analysis.” See 42 U.S.C. § 2000e-2(k)(l)(B)(i). But they never made any such showing. Although they purported to challenge the decisionmaking process as a whole, they never attempted to demonstrate that- the elements of that process are incapable of separation for analysis.
*741 The district court appears to have assumed that merely challenging the promotions process as a whole is sufficient to take advantage of the statutory exception, but that is simply not the law. The law clearly requires plaintiffs to identify and isolate specific employment practices. See 42 U.S.C. § 2000e — 2(k)(l)(B)(i). A plaintiff may challenge the process as a whole only if he first demonstrates that its elements are incapable of separation. See id. The district court erred by allowing Plaintiffs to reap the advantages of the statutory exception without first meeting its requirements.
B.
Even if Plaintiffs had satisfied the first prong of their prima facie case, their claim would nevertheless fail on the second prong. Plaintiffs simply did not present relevant statistical data that MWS’s promotion practices caused an adverse, disparate impact on its black employees.
The Supreme Court has explained that “the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group.” Watson, 487 U.S. at 994, 108 S.Ct. 2777. In cases involving promotion policies, “the relevant inquiry is comparing the number of protected group members benefitting from promotions with the number seeking them; this figure is then contrasted with the corresponding ratio for the non-protected group.” Phillips, 400 F.3d at 399; see also Phillips v. Gates, 329 Fed.Appx. 577, 581 (6th Cir.2009). Plaintiffs may rely on this comparison without regard to candidates’ qualifications. See Phillips, 400 F.3d at 400. In instances where the data regarding qualified or eligible applicants is incomplete or unavailable, plaintiffs may rely on other statistics, “such as measures indicating the racial composition of otherwise-qualified applicants for at-issue jobs.” Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 651, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (quotation marks omitted), superseded by statute on other grounds, Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071, 42 U.S.C. § 2000e-2(k).[7]
In this case, Plaintiffs’ evidence was merely a description of the racial demographics of MWS’s workforce. Dr. Moo-maw’s testimony demonstrated that black employees at MWS were disproportionately concentrated in positions which paid less and had fewer opportunities for advancement. Dr. Moomaw focused specifically on the representation of “blacks in higher level positions compared to the overall black to white ratio at MWS.” He did not look at actual promotion rates, nor did he compare the ratios of black and white employees eligible for promotions with those who actually received promotions. He explained that, in light of MWS’s alleged practice of altering job qualifications and criteria, it was impossible to determine who was actually eligible for promotions.
Plaintiffs’ evidence falls short of the relevant statistical data that the law requires. First, it compares the wrong groups of people. Instead of comparing the employees who actually applied for or were eligible for promotions with those who received them, see Phillips, 400 F.3d at 399, Plaintiffs compared the proportion of black em *742 ployees in high-paying positions with the proportion of black employees within the entire MWS workforce. Plaintiffs allege that it was futile to examine actual applicant data because MWS’s allegedly discriminatory practices discouraged black employees from applying for promotions; however, in such cases, a plaintiff is still required to construct a generally qualified applicant pool. See Wards Cove, 490 U.S. at 651, 109 S.Ct. 2115. In this case, Plaintiffs constructed a pool consisting of the entire MWS workforce, apparently assuming that custodians, equipment operators, painters, secretaries, and customer service representatives are qualified to work as engineers, biologists, and chemists. The Supreme Court has made clear that this type of analysis is deficient. See id. at 653-54, 109 S.Ct. 2115.
Additionally, the district court’s determination that each segment of MWS’s workforce should mirror the overall racial demographic of MWS amounts to an impermissible quota system. See id. at 652, 109 S.Ct. 2115. Essentially, Plaintiffs’ evidence shows only that black employees are disproportionately represented in lower-paying jobs that have fewer opportunities for advancement. However, “[rjacial imbalance in one segment of an employer’s work force does not, without more, establish a prima facie case of disparate impact with respect to the selection of workers for the employer’s other positions, even where workers for the different positions may have somewhat fungible skills.... ” See id. at 653, 109 S.Ct. 2115.
IV.
Because we find that Plaintiffs have failed to meet their prima facie case of disparate impact discrimination, we REVERSE the district court’s order. In light of this holding, we DISMISS as moot Metro’s appeal as to the order appointing Dr. Kathleen Lundquist as Special Master.

. The district court granted Plaintiffs' motion for class certification, certifying as a class "all former, current, and future African-American employees of the Metropolitan Government of Nashville and Davidson County, Metro Water Services from the period January 1, 2000 to the present.”

. After a full trial, a jury ruled in favor of Metro on Plaintiffs’ disparate treatment claims. The district court reserved the question of disparate impact liability. Plaintiffs moved for a new trial, and the district court granted the motion. Metro appealed the district court’s decision to grant a new trial, and a prior panel of this Court dismissed Metro’s appeal, but ordered the district court to rule on the disparate impact claims. See In re Metro. Gov't of Nashville & Davidson Cnty., 606 F.3d 855 (6th Cir.2010). Accordingly, the disparate treatment claims (which are awaiting a new trial) are not before us at this time.

.Metro also provided expert testimony. Metro’s expert, Dr. White, focused on the actual promotions that had occurred within MWS and concluded that there was no statistically significant difference between the promotion rate of black employees as compared to white employees. Indeed, Dr. White found that black employees actually advanced at a rate slightly greater than their representation in MWS’s workforce. However, the district court determined that Dr. Moomaw’s evidence was more persuasive than Dr. White’s. The court explained that Dr. Moomaw’s analysis, "[wjhile necessarily imperfect,” was a better comparison given that it analyzed "blacks in higher level positions compared to the overall black to white ratio at MWS.”

. The district court held that Metro did not demonstrate that its practices were justified by business necessity. Metro has not challenged that conclusion on appeal.

. The order does, however, permit MWS to designate a proctor to attend the interviews.

. Metro also argues that Plaintiffs’ claims should not be analyzed under a disparate impact theory at all because they are more amenable to a disparate treatment analysis. However, a Title VII plaintiff is not required to choose one discrimination theory to the exclusion of the other. See, e.g., Dunlap, 519 F.3d at 629 (plaintiff relied on both theories to establish discrimination); Carpenter v. Boeing Co., 456 F.3d 1183, 1192-93 (10th Cir. 2006) (same); Acree v. Tyson Bearing Co., Inc., 128 Fed.Appx. 419, 426 (6th Cir.2005) (stating that "a plaintiff may rely upon one of two alternate theories of recovery to establish a claim of illegal discrimination"). Further, a plaintiff may rely on the same set of facts to establish liability under either theory. Int’l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

. The 1991 amendments superseded some aspects of Wards Cove. They permit a plaintiff to challenge an employer’s decisionmaking process as a whole if its elements are not capable of separation; and they also superseded portions of Wards Cove pertaining to the "business necessity” defense. See Phillips, 400 F.3d at 397-98. The Amendments did not disturb the aspect of Wards Cove pertaining to statistical evidence, and its holdings on that issue remain the law. See id. at 399.