RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0187p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

WILLIAM HOWE, et al.,

        *Plaintiffs-Appellees*,

    v.

CITY OF AKRON,

        *Defendant-Appellant.*

No. 11-3752

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:06-cv-2779—John R. Adams, District Judge.

Argued: January 17, 2013

Decided and Filed: July 22, 2013

Before: COLE and DONALD, Circuit Judges; RUSSELL, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Irene C. Keyse-Walker, TUCKER ELLIS LLP, Cleveland, Ohio, for Appellant. Dennis R. Thompson, THOMPSON & BISHOP LAW OFFICES, Akron, Ohio, for Appellees. **ON BRIEF:** Irene C. Keyse-Walker, Benjamin C. Sassé, TUCKER ELLIS LLP, Cleveland, Ohio, Cheri B. Cunningham, Patricia Ambrose-Rubright, Michael J. Defibaugh, CITY OF AKRON, Akron, Ohio, for Appellant. Dennis R. Thompson, Christy B. Bishop, THOMPSON & BISHOP LAW OFFICES, Akron, Ohio, Bruce B. Elfvin, Barbara K. Besser, Stuart Torch, ELFVIN & BESSER, Cleveland, Ohio, for Appellees.

_____

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

---

**OPINION**

---

COLE, Circuit Judge.  Defendant-Appellant City of Akron ("the City") appeals the district court's interlocutory order to promote eighteen Akron Fire Department ("AFD") firefighters.  The order was issued after a jury trial resulted in verdicts and a judgment concluding that, under Title VII, the Age Discrimination in Employment Act ("ADEA") and Ohio law, the 2004 AFD firefighters' promotional exam adversely impacted twelve Caucasian Captain candidates on the basis of race, eight Lieutenant candidates on the basis of age, and three African-American Lieutenant candidates on the basis of both age and race.  The City argues that (1) the injunction cannot stand because there is insufficient evidence to support a prima facie case of disparate impact liability; and (2) even if there is sufficient evidence for a prima facie case, the district court abused its discretion in issuing the injunction.  Because the district court did not abuse its discretion in issuing the injunction, we affirm.

I.

A.

In December 2004, the City conducted promotional exams for the positions of Captain and Lieutenant in the Akron Fire Department.  The two sets of exams were prepared, administered and scored by E.B. Jacobs, an outside testing consultant.  Both the Lieutenant and Captain exams contained a 100-question multiple choice component on technical job knowledge and two oral assessment exercises.  The Lieutenant exam also contained a written work-sample exercise.  The Captain exam did not have a written exercise, but instead had an additional oral assessment involving a group exercise.

Promotion candidates were placed on an "eligibility list" in an ordered ranking. In order to be placed on the eligibility list at all, a candidate had to have a scaled score of at least seventy percent on the promotional exam.  The scaled exam score was converted to a ninety-point scale, and then up to ten points were added, corresponding

to the candidate's seniority level.  The candidates were then ranked in order of their total scores, from highest to lowest, on the eligibility list.

The promotional process dictated that candidates be selected from the eligibility list according to the "Rule of Three," which "required that for each vacant position, the three top-ranked candidates [be] considered for the vacancy."  When there was a single vacancy, the chief of the fire department was supposed to interview the three candidates and then select one to promote.  When there were multiple vacancies, a number of candidates from the top of the list, equal to 1.4 times the number of vacancies, would be certified for consideration and the chief would choose from among them.  In fact, all candidates were promoted congruent with their place in a "straight rank-ordering" based on written and oral exam results.  Interviews were conducted, ostensibly pursuant to the Rule of Three, but it is unclear whether or how the interviews contributed to the promotion selections.

Exam pass rates and promotion rates were as follows:

| Rank | Class | Pass Rate | Promotion Rate |
|------|-------|-----------|----------------|
| Lieutenant | Over-40 | 76% (29/38) | 24% (7/29) |
| Lieutenant | Under-40 | 87% (55/63) | 38% (21/55) |
| Lieutenant | Caucasian | 85% (69/81) | 36% (25/69) |
| Lieutenant | African-American | 75% (15/20) | 20% (3/15) |
| Captain | Caucasian | 81% (26/32) | 27% (7/26) |
| Captain | African-American | 78% (7/9) | 71% (5/7) |

B.

The firefighter plaintiffs initially brought twelve employment discrimination claims against the City, challenging the promotion selection processes.

Counts I, III and V alleged disparate-impact age discrimination on the basis that the promotional exams for the ranks of Lieutenant and Captain had an adverse impact on twenty-three firefighters due to their age.  29 U.S.C. § 621 *et seq*. ("ADEA"); Ohio

Rev. Code Ann. §§ 4112.02, .14, .99.  Counts II, IV and VI alleged disparate-treatment age discrimination on the basis that the same twenty-three candidates for promotion were subject to disparate treatment on the basis of their age in the administration and scoring of the promotional exam.  29 U.S.C. § 621 *et seq.*; Ohio Rev. Code §§ 4112.02, .14, .99.

Counts VII and IX alleged that the promotional exam for Lieutenant had an adverse impact on three African-American firefighters due to their race.  42 U.S.C. § 2000e *et seq.* ("Title VII"); Ohio Rev. Code Ann. § 4112.02(A).  Counts VIII and X alleged that the promotional exam for Captain had an adverse impact on twelve Caucasian firefighters due to their race.  42 U.S.C. § 2000e *et seq.*; Ohio Rev. Code Ann. § 4112.02(A).  Counts XI and XII, which the district court dismissed prior to trial, alleged violations of the Equal Protection Clause of the Fourteenth Amendment.

A jury trial commenced on December 3, 2008.  After the close of Plaintiffs' case, the parties stipulated to dismissal of Counts II, IV, and VI (the age discrimination disparate-treatment claims).  At the close of all the evidence, Plaintiffs voluntarily dismissed the portions of Counts I, III and V (the age discrimination disparate-impact claims) that related to the exams for Captain rank.  The district court denied the City's motion for judgment as a matter of law on the remaining claims, which were submitted to the jury.  The jury found in favor of Plaintiffs on all remaining claims.[1]

The district court entered a judgment in accordance with the jury's verdict.  It concluded that the AFD's 2004 promotional exam adversely impacted twelve Caucasian Captain candidates on the basis of their race, adversely impacted three African-American Lieutenant candidates on the basis of their race, and adversely impacted eleven Lieutenant candidates on the basis of their age. Each Lieutenant candidate was awarded $9,000 in compensatory damages and $72,000 in front pay.  Each Captain candidate was awarded $10,000 in compensatory damages and, with one exception, $80,000 in front

---

[1]The jury's decision on Plaintiffs' Title VII claim was "advisory only" because there is no right to a jury trial on Title VII claims.  However, the district court's disposition of the Title VII claim was required to be consistent with the jury's findings on Plaintiffs' other claims.  *See Gutzwiller v. Fenik*, 860 F.2d 1317, 1332-33 (6th Cir. 1988).

pay. The district court denied the City's renewed motion for judgment as a matter of law, and denied the City's motion for a new trial as to the issue of liability.

The district court, however, granted the City's motion for a new trial solely on the issue of damages. The court held that "[i]n spite of the differing circumstances of each of the 23 plaintiffs, the jury awarded each Lieutenant candidate the same amount and each Captain candidate the same amount (with one exception as above)," thereby "fail[ing] to . . . award damages based on the testimony of the individual Plaintiffs." At the new trial, the court pledged to also consider Plaintiffs' motion to alter or amend the judgment, in which Plaintiffs had requested, among other things, "equitable relief [] in the form of promotion to any prevailing Plaintiff electing such relief."

At a pretrial conference on July 7, 2011, the district court said it would grant the motion for equitable relief by ordering promotions:

> I was concerned [earlier] that other employees may be displaced; and . . . [believed] perhaps an alternative would be a new test, which . . . would be a more appropriate remedy.

> However, circumstances have changed. . . . Promotions, it appears, are now feasible. . . . There are over 25 vacancies in the lieutenant position and there are 5 vacancies in the captain's position.

The court also cited its concern that the City could be "crippled" if no promotions were made until the end of all litigation.

On July 13, 2011, the court issued an order requiring the City to promote Plaintiffs no later than July 18, 2011. The City appealed the preliminary injunction to this Court on July 14, 2011. Plaintiffs moved to dismiss the appeal on the grounds that the district court had not yet entered a final order and piecemeal appeals are disfavored. This Court denied their motion, noting that "[a]n order directing injunctive relief in an employment context, but that leaves damages remaining to be calculated, may be an appealable injunctive order."

The new damages trial commenced as a bench trial on July 25, 2011. During trial, the court acknowledged that it had "discretion in the interim" (presumably between

the issuance of the order and final judgment) to "revisit" its decision to promote Plaintiffs. Afterward, among other things, the City moved for judgment on partial findings. *See* Fed. R. Civ. P. 52(c). The district court denied the motion, "conclud[ing] that the better course is . . . to render its rulings after the close of all the evidence, testimony, and the applicable law, and after the parties' post-trial submissions." The new damages trial concluded on November 28, 2012. The district court has yet to issue a final judgment.

On interlocutory appeal, the City presents two objections to the preliminary injunction ordering promotions: (1) there is insufficient evidence to support a prima facie case of disparate impact liability; and (2) even if there is sufficient evidence for a prima facie case, the district court abused its discretion in issuing the injunction.

## II.

Because there has been no final judgment in this case and the district court may yet revisit its decision regarding promotions, we review only the question of whether the district court abused its discretion in issuing the injunction and reach the merits of the case only as necessary to do so. *See Curran v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 622 F.2d 216, 230 n.17 (6th Cir. 1980) (although a court of appeals has the jurisdictional power to decide additional issues, it should "ordinarily" limit itself to the abuse-of-discretion question). Under the abuse-of-discretion standard, findings of fact are reviewed for clear error, *see Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009), and conclusions of law are reviewed de novo, *see Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008) (citations omitted).

The propriety of a preliminary injunction depends on four factors: "(1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer irreparable injury if the court does not grant the injunction; (3) whether a preliminary injunction would cause substantial harm to others and (4) whether a preliminary injunction would be in the public interest." *Samuel v. Herrick Mem'l Hosp.*, 201 F.3d 830, 833 (6th Cir. 2000) (citation omitted). We address each factor in turn.

A.

As to the first factor, likelihood of success on the merits, the City makes two arguments: (1) Plaintiffs failed to show "a substantial likelihood of the adverse impact finding being upheld"; and (2) even if there was a substantial likelihood of success on the liability finding regarding disparate impact, Plaintiffs failed to show that each individual Plaintiff was entitled to promotion.

In a Title VII disparate-impact claim, the burden of proof shifts between the parties. First, the plaintiff-employee must make out a prima facie case wherein he identifies "a particular employment practice" that "caused a significant adverse effect on a protected group." *United States v. City of Warren*, 138 F.3d 1083, 1091 (6th Cir. 1998) (citations omitted); *see also* 42 U.S.C. § 2000e-2(k)(1)(A)(i). If the plaintiff makes out a prima facie case, the burden shifts to the defendant-employer to show that the practice in question is a "business necessity." *City of Warren*, 138 F.3d at 1091-92. If the defendant demonstrates business necessity, the burden returns to the plaintiff to show that there are alternative practices without a similarly undesirable discriminatory effect, which would also serve the employer's legitimate interest. *See Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626, 629 (6th Cir. 2008) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 432 (1975)). This Court applies the same framework to ADEA disparate-impact claims. *See Abbott v. Fed. Forge, Inc.*, 912 F.2d 867, 872 (6th Cir. 1990) (citing *Laugesen v. Anaconda Co.*, 510 F.2d 307, 311 (6th Cir. 1975) (additional citation omitted)).

1.

Within the above framework, identifying a specific employment practice to make out a disparate-impact claim "'is not a trivial burden,' and involves more than simply 'point[ing] to a generalized policy that leads to such an impact.'" *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 403 (6th Cir. 2008) (quoting *Meacham v. Knolls Atomic Power Lab.*, 544 U.S. 84, 100, 101 (2008)). However, a broader "decisionmaking process" can be considered an employment practice if its elements "are not capable of separation for analysis." *Phillips v. Cohen*, 400 F.3d 388, 398 (6th Cir. 2005) (quoting

42 U.S.C. § 2000e-2(k)(1)(B)(i) (permitting identification of an eighteen-step process as an employment practice where the question was not contested).

The City argues, citing *Grant v. Metro. Gov't of Nashville and Davidson Cnty.*, 446 F. App'x 737 (6th Cir. 2011), that the district court erred as a matter of law by permitting Plaintiffs to identify the promotional process in its entirety as a specific employment practice without requiring Plaintiffs to first show that the elements of the process were incapable of separation. According to the City, the only employment practices identified by Plaintiffs were the promotional exams, which cannot be said to have had an adverse impact because comparing pass rates did not demonstrate disparate impact based on race or age.

In *Grant*, this Court held that the plaintiffs failed to identify a specific employment practice when they challenged a decisionmaking process of "preselection" composed of "tailored job qualifications, selective interviewing, and subjective decisionmaking" without isolating any of the listed items. *Id.* at 740; *see also id.* at 743 (listing "lateral transfers" and "out-of-class assignments" as additional aspects of the challenged process) (Clay, J., dissenting). Although the district court specifically held that the elements were not capable of separation, *see id.* at 744, this Court held that to be insufficient because the plaintiffs themselves had not made this showing. *See id.* at 741.

The challenged promotional process in this case is easily distinguishable from that in *Grant*. Here, the City promoted candidates in rank-order by score results (where the score was the sum of the candidate's exam score plus seniority). A specified, quantifiable process led to each decision. Isolating the effects of the individual elements would have been harder if the "Rule of Three," which required those with the top three scores to be considered for each promotion, had in fact influenced the promotion process such that lower-ranked candidates were promoted ahead of higher-ranked ones. Such a scenario might have required Plaintiffs to attempt to quantify how much disparate impact stemmed from the exam and how much from the interviews. But both sides agree that candidates were promoted in perfect consistency with their rank-order. *Cf. Phillips*,

400 F.3d at 398 (identifying far more subjective practices as part of an inseparable process: "detailing; ignoring rank and grade requirements . . . ; manipulation of performance reviews, employee awards, and disciplinary action . . . ."). Here, Plaintiffs sufficiently identified a specific employment practice.

2.

Having identified a specific employment practice, Plaintiffs next had to demonstrate the adverse effect of that practice on a protected group. The City argues that the district court erred as a matter of law in permitting Plaintiffs to demonstrate adverse effect by applying the "four-fifths rule" to promotion rates instead of exam pass rates. Because we agree with the district court that the promotional process in this case constitutes a specific employment practice, we must also agree that the outcomes of that practice—promotion rates—are the proper metric for determining "adverse effect" or lack thereof. *See Abbott*, 912 F.2d at 872 (requiring "statistical evidence of a kind and degree sufficient to show that *the practice in question* has caused the exclusion of applicants for jobs because of their membership in a protected group" (quotation marks and alterations omitted) (emphasis added)).

The so-called "four-fifths rule" may be used to demonstrate the adverse-effect element of a disparate-impact claim, though the rule is not dispositive. The rule instructs that "[a] selection rate for any race, sex, or ethnic group which is less than four-fifths . . . of the rate for the group with the highest rate" be "generally . . . regarded . . . as evidence of adverse impact." 29 C.F.R. § 1607.4 (D). The City does not dispute that African-American candidates and candidates over the age of forty were promoted to Lieutenant at less than 80% the rate at which Caucasian candidates and candidates under the age of forty, respectively, were promoted. Instead, the City argues that promotion rates were an altogether inappropriate metric, and exam pass rates should have been compared. The Plaintiffs, however, distinguish between pass-or-fail promotional testing, where the actual score does not matter except insofar as the exam taker passes or fails, and graded testing, where those who achieve passing scores are *not* on equal footing, but are selected for promotion in rank-order.

The City relies on *United Black Firefighters Association v. City of Akron*, No. 5:90 CV 1678, 1994 WL 774510 (N.D. Ohio Aug. 31, 1994), which involved a test used to rank candidates in line for promotion. The district court in that case held that, under *Black v. City of Akron*, 831 F.2d 131 (6th Cir. 1987), the four-fifths rule should be applied to compare exam pass rates, not promotion rates. *See United Black Firefighters*, 1994 WL 774510 at *5-6, and this Court affirmed the district court's reasoning. *See United Black Firefighters Ass'n v. City of Akron*, 81 F.3d 161, at *2 (6th Cir. 1996) (table opinion) ("The District Court properly looked to the examination pass rate for black candidates, not the number of actual promotions . . . ."). However, we are not bound by the unpublished decision. As the concurrence points out, a comparison of exam pass rates cannot adequately capture the effects of a "rank-order selection process." *See id*. at *3 (Cleland, J., concurring) ("[C]andidates [with passing scores] at the bottom of the list were really no better off than those who failed to make the cut: neither could reasonably expect to be promoted."). Like the concurrence, we distinguish *Black* from the instant case on the ground that the test in *Black* was solely "pass/fail," making no distinction among passing candidates.

The City responds that its promotions were not rank-ordered due to the Rule of Three introducing a discretionary component and, even if they were, Plaintiffs produced no evidence of their scores being "clustered" at the lower end of the distribution. *See id.* at *3. The first point is not persuasive, given that *all* of the dozens of promotions made coincided exactly with the candidates' places on the rank-ordered list. As to the second point, there was no need for Plaintiffs to demonstrate clustering of test scores at the district court level because the district court permitted them to use promotion rates as a metric. In any case, a substantially lower rate of rank-order promotion necessarily implies clustering away from the top (if not necessarily near the bottom) of the eligibility list, even if the term "clustering" is not used.

The City argues that, even if Plaintiffs demonstrated an adverse effect as to the Lieutenant candidates, there was no adverse effect on a *protected group* with respect to the Caucasian Captain candidates. According to the City, Plaintiffs failed to show that

the City is "that unusual employer who discriminates against the majority." *See Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 (6th Cir. 1994) (quotation marks omitted). Although the City had submitted a proposed jury instruction regarding this alleged requirement, the district court held that the City waived this argument because it failed to object to the district court's failure to give the proposed instruction during the later charging conference at which the parties and the district court met to "go through these [jury] instructions and finalize them." *See* Fed. R. Civ. P. 51(c)(1) ("A party who objects to . . . the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."). The day after the charging conference and before the jury retired, the City filed three "distinct[] and contemporaneous[]" objections to other jury instructions, *see Hartford Fin. Servs. Grp., Inc. v. Cleveland Pub. Library*, 168 F. App'x 26, 32 (6th Cir. 2006), but it did not file an objection to the absence of the unusual-employer instruction. The fact that the City raised the potential applicability of the unusual-employer requirement before the court in other contexts, such as its motion for summary judgment and trial brief, is not enough to overcome this failure. *See Libbey-Owens-Ford Co. v. Ins. Co. of N. Am.*, 9 F.3d 422, 427-29 & n.6 (6th Cir. 1993) (where party's failure to object specifically and directly to a jury instruction constituted waiver even though the party had raised the issue in its trial brief and even raised it "obliquely in written and oral objections to jury instructions"). Therefore, the City has waived that argument.

Even if the argument had not been waived, it is far from clear that the unusual-employer requirement would have been applicable in this case. We have only adopted it for disparate-treatment claims, and even in that limited context we have repeatedly expressed our misgivings. *See Pierce*, 40 F.3d at 801 n.7; *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 257 (6th Cir. 2002). We have never held it to apply to disparate-impact claims, for which—unlike disparate treatment claims—no proof of intent is required. *See Murray v. Thistledown Racing Club*, 770 F.2d 63, 67 (6th Cir. 1985) ("[T]he reverse discrimination complainant bears the burden of demonstrating that he was *intentionally* discriminated against despite his majority status." (quotation marks omitted) (emphasis added)). Furthermore, an unusual-employer showing is often made

using statistical evidence, *see, e.g., Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615-16 (6th Cir. 2003), which would seem redundant in a disparate-impact analysis where a statistical disparity is an element of the claim itself, *cf. Collins v. Sch. Dist. of Kansas City*, 727 F. Supp. 1318, 1322 (W.D. Mo. 1990) (criticizing the application of the unusual-employer requirement in disparate-treatment cases on the ground that it "converts every reverse discrimination case into a . . . disparate impact case").

Given the lack of binding precedent to the contrary and the waiver of the argument, the Captain candidates' non-minority status does not change our agreement with the district court's assessment that all of the promoted Plaintiffs had demonstrated substantial likelihood of success on the merits with regard to the adverse effect element of their disparate impact claims.

3.

The City makes a valid point that, even if Plaintiffs have shown a substantial likelihood of success on the merits as to disparate-impact liability, not all Plaintiffs still employed with the City would necessarily have been promoted absent discrimination. However, all Plaintiffs have demonstrated a reasonable likelihood of promotion. Unlike monetary damages, promotions are binary; they cannot be discounted according to loss-of-chance methods. Assuming, for argument's sake, that the City correctly estimates that the average candidate in this case would have only a 29% chance of promotion, there is no way for the district court to give each candidate 29% of a promotion while waiting for a final judgment. Additionally, the City has provided no basis on which to distinguish between worthy and unworthy Plaintiffs.

Given that Plaintiffs have demonstrated a substantial likelihood of success on the merits as to liability and there is no way to provide a partial injunctive remedy, there is a sufficient likelihood of success as to individual promotions to warrant a preliminary injunction. The first factor in the abuse-of-discretion analysis militates in favor of granting injunctive relief.

B.

The City argues that "the loss of job and/or job opportunity are not enough" to demonstrate irreparable harm—the second factor—because "they may be remedied by back pay and instatement/reinstatement or other monetary damages."  The only binding authority the City cites on this point is *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy . . . are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." (quotation marks omitted)).  In *Sampson*, the plaintiff merely claimed loss of income and reputation, and the Supreme Court appeared to confine its irreparable harm analysis to cases involving "discharge of probationary employees."  *See id.* at 91-92 & n.68.

Plaintiffs here have much more invested in their careers than a probationary employee does. Most have over two decades of seniority.  "Many" Plaintiffs were already acting in their new ranks at the time the district court ordered promotions.  And even with the ordered promotions, the district court pointed out that Plaintiffs "would still be at a significant disadvantage when compared to those that benefitted from the prior testing process."  Among other things, the district court noted that, without promotions, Plaintiffs will be unable to gain experience and unable to seek the next rank during the following round of testing.

Furthermore, this Court has previously found that promotion delays constitute irreparable injury for firefighters.  *See Johnson v. City of Memphis*, 444 F. App'x 856, 860 (6th Cir. 2011) (citing *N.A.A.C.P. v. City of Mansfield,* 866 F.2d 162, 171 n.6 (6th Cir. 1989)).  Plaintiffs have shown that substantially delayed promotions would cause irreparable harm to their careers as firefighters.

C.

As to the third preliminary injunction factor—substantial harm to others—the City argues that granting the preliminary injunction harmed other firefighters by

reducing, in some cases to zero, certain non-Plaintiff firefighters' chances of promotion. According to the City, the eight Caucasian plaintiffs promoted to Lieutenant will be "skipping over" ten non-Plaintiff African-American candidates on the Lieutenant eligibility list. Additionally, the City points out that Captain positions are overstaffed due to the promotions, preventing some firefighters from sitting for the Captain exam at all. The City does not explain whether the ten non-Plaintiff African-American candidates would have been promoted in the upcoming cycle in the absence of the order, or whether they merely would have risen slightly higher on the eligibility list.

The City fails to demonstrate that the harms it alleges should be attributed to the district court's preliminary injunction rather than to its own inaction. As the district court put it:

> Akron chose not to engage in a new promotional process once this litigation began. Akron chose to maintain vacancies to the point that it "just can't survive" with any further delay. Akron chose to maintain vacancies . . . artificially decreasing the vacancies at the Captain's level. *Akron may not now consolidate all of its voluntary decisions and foist the results of its choices on Plaintiffs.*

*Cf. United States v. Edward Rose & Sons*, 384 F.3d 258, 264 (6th Cir. 2004) (holding the defendant responsible for harm resulting from the injunction). Also, the City cites no precedent for its view. The City's logic would force this Court to conclude that practically every order to promote causes substantial harm, since the number of vacancies in an organization is almost always finite and additional qualified applicants usually exist. The City fails to show that the ordered promotions cause substantial harm to others, and thus the third factor weighs in favor of Plaintiffs.

## D.

Finally, as to the fourth preliminary injunction factor, the City argues that granting the injunction harmed the public interest because the City had not budgeted for all the resulting officer positions. According to the City, only five funded Lieutenant vacancies and three funded Captain vacancies existed at the time of the injunction. The City argues that the district court wrongly relied on the number of *authorized* positions,

which was much greater for each rank. The injunction, in effect, ordered the promotion of eight Plaintiffs to Lieutenant and ten Plaintiffs to Captain. The City claims that the district court failed to distinguish between vacancies and *funded* vacancies for Lieutenant positions and disregarded the shortage of funded vacancies for Captain.

The City's funding argument is not persuasive on its face, and does not address several points raised by the district court in considering the same argument. The City's only allegation of actual harm is that unnecessary positions will be paid for by public funds, and the City makes no attempt to quantify the amount of "waste"—"unnecessary" funds spent. Also, the district court pointed out that (1) Akron has saved a significant amount of money by filling vacancies with "acting" officers during this litigation; (2) vacancies at the District Chief and Deputy Chief levels exist, so current Captains could be promoted to make room for Captain candidate Plaintiffs; and (3) the current number of vacancies are a result of voluntary AFD choices. The City does not dispute or otherwise address any of these points.

The City also notes perfunctorily that "AFD leadership positions must be filled by firefighters who possess the appropriate skills, knowledge and abilities." Presumably the City is trying to imply, though it does not say so explicitly, that the promoted Plaintiffs do not possess these qualities, and that their promotions harm the public interest by placing incompetent firefighters in leadership positions. However, out of eighteen Plaintiffs promoted pursuant to the injunction, only three were ineligible according to the test. Furthermore, the City does not specify which skills, knowledge and abilities are absent in which Plaintiffs, and why these qualities are particularly "appropriate" for leadership positions. This argument fails for lack of development.

The City fails to show that ordering the promotions would negatively impact the public interest.

III.

Given that no factor weighs against ordering the promotions, the district court did not abuse its discretion in issuing the preliminary injunction requiring the City to promote certain Plaintiffs.  Accordingly, we affirm.